The next case is Hamilton v. Commissioner of Social Security. Good morning. May it please the court. I'm Lars Mead on behalf of Ms. Hamilton. I want to jump in and draw the court's attention to the record at page 22, which is where the administrative law judge evaluated the mental health evidence that was present in the record. Particularly her evaluation of the longstanding treating psychiatrist, Dr. Mayerhoff. This opinion was given little weight and we submit that the ALJ failed to engage in the required Burgess analysis and failed to properly weigh the evidence and that this constitutes a reversible error in this case. But to the extent that the judge attempted to explain her reasoning behind granting... You raised the Burgess factors and the objections to the district court. I did go back and check. You did raise it to the magistrate judge, but for whatever reason you did not specifically note the failure to follow the Burgess factors in the objections. So isn't that a problem? I think under our case law, you waived. That's a legal argument that was waived, right? So I would say a couple of things. One is I don't believe that we waived it. I believe that we incorporated by reference. I'm aware of the case that you're referring to in which there was no objection whatsoever to the formulation of the residual functional capacity of the claimant. The court there held that it was waived. I believe the court therein also, however, stated that if there were serious errors, the court has the discretion to retain jurisdiction to evaluate whether or not the ALJ's evaluation was proper. What are the serious errors here? So if we look at the evidence in the record that the judge cited to support her determination to grant little weight, the first one is Exhibit B6F. This is in the record at page 275 to 281. It is essentially two treatment notes from October and December of 2015. The issue with that is that the alleged onset date in this case is July 8th of 2016, more than six months after those two treatment records. How they are relevant to evaluating whether or not the treating opinion here is entitled to great or controlling weight, I don't know. Similarly, Exhibit B7F, which is in the record at pages 283 to 303, we're getting closer, but it's still treatment that's prior to the alleged onset date. More importantly, in Exhibit B7F in the record here, this would be at pages 301 to 303, we're about 10 days or so prior to the alleged onset date. The claimant's symptoms are not mild. She is, in fact, diagnosed with bipolar disorder. She is prescribed a list of medications that she had been on, Lexapro, Klonopin, Depakote. She's continued to be prescribed the Depakote and the Cymbalta with an ongoing bipolar illness. So I'm not sure how that would support the judge's weight that was given to Dr. Mayerhoff. Next, the judge cites to Dr. Mayerhoff's records themselves, and I thought this was very interesting. Looking at the specific citations that the judge made to Dr. Mayerhoff's records, she's effectively cherry-picked the evidence. So, for example, she cites to page 24 of Dr. Mayerhoff's records. This is in the record at page 1116. It's essentially a blank form. It contains a signature at the bottom and an indication of a prescription, but it's essentially a form with no actual findings whatsoever. It is, however, part of an office report and two pages prior to the page cited by the judge. At page 1114, it indicates that the claimant is very depressed during the holiday. It's the notice from December 23rd of 2016. It indicates under depression scale that the claimant is basically miserable. So how that is not an indication of significant psychological problems that would be consistent with the restrictions that Dr. Mayerhoff gave, I'm not sure. And that is the pattern in this entire string citation that the judge used to support granting little weight. For example, again, the judge cited to page 28. At page 28 of the exhibit, this is page 1120 of the record, there's a whole list of medications that the claimant is on for her mental health concerns. And as part of that office visit, a couple of pages prior at page 1118, the claimant is sad and irritable. Her overall emotional state is noted to be poor. So once again, I'm not sure how that would support the judges. Well, exhibit 28 is being cited as it's, the site is after the sentence that says that the doctor's opinion is not consistent with the claimant's routine and conservative treatment history involving medication and psychotherapy with no evidence of any significant exacerbations. And I know you argue that this is somehow misusing, you know, you don't have to be admitted to the hospital in order to have a severe impairment that would render you unable to work. But how 28, what you just said, seems consistent with that sentence. You're saying she was on medications. Yes, she was on medications. It appears that the ALJ's assessment was just that this was a conservative treatment and inconsistent with the impairment. So what was wrong with that assessment? Well, the idea, and I think the case law backs this up here, the Estrella case in particular, talks about the fact that people who have serious mental problems are not necessarily going to be hospitalized, that we can expect to see throughout a treatment record a waxing and waning of their symptomatology. And she fails to engage in an analysis here which would lead one to look at the specific pages that she cites are not the pages that talk about the fact that the claimant is consistently documented by a longstanding treating psychiatrist, a specialist in the area who sees her on a regular basis as having significantly disabling symptoms that would then be consistent with his overall opinion. And we submit shouldn't have been granted little weight. I think, you can correct me if I'm wrong also, there was no reference to the May 2017 opinion at all. I mean, there was no discussion of any of the treating physician's evaluations, but there wasn't even a reference to the May 2017 one, right? Not a reference, and not only that, but in the analysis of Dr. Mayerhoff's opinion, the judge who granted great weight to Dr. Slowick's opinion fails to mention the part of Dr. Slowick's opinion in which she found that the claimant had a moderate to markedly limited ability to sustain an ordinary routine and regulate emotions, which would seem to be directly opposed to the RFC that the judge ultimately found, which at page 16 says that the claimant may make judgments and respond appropriately to usual work situations in a routine setting that is repetitive. And so what are we to make of the independent psychological consultative examination findings describing the claimant as having fluent speech, goal-directed thought process, intact orientation, mild to moderate impaired attention and concentration, mostly average intellectual functioning, good insight and fair judgment? I mean, that seems really quite at odds with a fairly blanket disability statement provided by Dr. Mayerhoff. How are we to think about that? Well, I would point out that Dr. Harding only reviewed a small portion of the record and never met with the claimant. So how he reaches these summary conclusions is actually beyond me. But Dr. Slowick also found only moderate limitations and did not find such a dramatic blanket disability as Dr. Mayerhoff suggested. And what we would submit there is that the finding of disability doesn't require the claimant to be like an invalid or be completely incapable of managing herself. She's oriented to time and space. She has relationships with her family. She's capable of watching TV. That does not mean that she would be able to participate in a competitive work environment on a consistent enough basis to actually sustain employment. But there were limitations that were proposed with regard to and described in her RFC. And I wasn't really sure what you meant by invalid. Like bedbound? Well, what I'm saying is it's not like she can't leave the house. She attends her medical appointments, for example. She is reluctant to go out in public. I think that's well documented. But her mood and the diagnosis of bipolar disorder reflects this, is wildly inconsistent. And the vocational expert agreed that if she was off task 15% of a day, she would be disabled. So I think that with that background and those kinds of standards in play, a more detailed analysis of what it is that is meant by a moderate to marked limitation on ordinary routine and regulation of emotions, to which the judge gave allegedly great weight. What is meant by that in the context of that RFC I think is, again, a reversible error here that the judge did not engage in a more detailed analysis. Lastly, she also gave great weight to a non-medical source, which is a plain error. The licensed clinical social worker had no supporting records, so there was really no basis to give any weight to that opinion. She gives great weight to the opinion of the licensed clinical social worker. That is also, we submit, a plain reversible error. Thank you. We'll hear from your adversary. Good morning, Your Honors. May it please the Court, Molly Carter for the Acting Commissioner. This Court should affirm the Commissioner's decision because substantial evidence supports it. The ALJ accepted that Ms. Hamilton had several severe mental impairments, specifically ADD, bipolar disorder, depression, anxiety, and PTSD. There's no question that she had those impairments and that they were severe impairments. The ALJ also accepted that Ms. Hamilton's mental abilities were quite limited. Specifically, the ALJ found that she was limited to only simple tasks, no work requiring a high quota production rate pace, a routine work setting that was repetitive from day to day, only occasional, easily. Ms. Carter, why should we be concerned that the ALJ did not follow the procedures that we have said over and over again should be followed? I'm very troubled by the Burgess factors. It's clear you're supposed to explicitly go through them, and the ALJ completely failed to do that, did not articulate how long the treatment took place for, how frequent it was, the nature of the treatment. And if you're going to give little weight to a treating physician and credit a non-consultative exam and a social worker, wouldn't you want to have the comfort and confidence that the ALJ understood that this treating physician was not someone who treated the petitioner for a short period of time, but was for years, 33 on a monthly basis for years. So why shouldn't we be troubled by the failure to even acknowledge that when we have told the ALJs that they're supposed to explicitly go through that? Certainly, Your Honor. Several details in response that I hope will allay your fears. One is that- Was it an error? It was an error. I believe that our brief has conceded that the ALJ did commit a procedural error as this court has defined it. We're not- So why shouldn't we be worried about that when the ALJ goes on to credit a social worker and someone who did not examine Ms. Hamilton? Because this court- Didn't review the treating physician records either. You mean Dr. Harding didn't review all of the treating physician's records? Right. The ALJ did. Right. Okay. Well, this court has also said several times that the procedural error can be harmless, and most recently and most detailed as related to this case in the Shillow case. The procedural error can be harmless if the ALJ nevertheless- the analysis as a whole shows that the substance of the rule has not been traversed. And Shillow, in addition to this court's decision in Meyer, which is also cited in our brief, shows that the ALJ's discussion of the record did acknowledge- The ALJ had no discussion of the treating physician. Not only did it say not how long, how often, it just cited these records, leaving out the May- it's not even clear that the ALJ understood there was a May 2017 opinion that had a lot of detail about her depressed mood, her inability to concentrate, memory problems. So we don't even know if the ALJ skipped that. And then, as your adversary noted, and I think this is really problematic, the ALJ says, notably, the claimant's other mental status examination findings were also consistent with the claimant not severely mentally functionally limited, and then cites medical records that predate. The only citations for that notable finding are records that predate the alleged onset date. So how is that so important when it predates the onset date? Your Honor, I respect that you've asked about four or five questions. I do want to answer them all. Could you give me a chance? Answer that one. How can it be a notable finding when the exhibits that are cited for that predate the onset date? Why is that notable if it predates the onset date? First, it's notable because it's in the record. The ALJ is required to consider the entire record. The onset date was amended at the hearing, so the ALJ had considered the entire record. Second, that's consistent with the mental status exams that exist throughout the record, as are cited in our brief. For example, the claimant was consistently noted to be alert with normal mood and affect. That wasn't just something that was happening before the relevant period. It was happening throughout the entire period. 498, 501, 513, 593, 639, 801, 808, 827, 833, 837, 851, 867, 872. I agree with you that there are many. She saw a number of doctors in her, not her psychiatrist, but her regular treating physician. There are regular notations that she's fine. But why isn't it troubling? I mean, Dr. Slowick's findings, I think your adversary makes a good point, couldn't be read as much to support his position as the ALJ's. I get it that moderate to marked limits doesn't entail a necessary finding of disability. But given the brevity of the discussion of the treating physician, combined with this other opinion that does say moderate to marked limits on ordinary routine and regulating emotion, which seems to imply you would not be able to show up to work every day except two days a month. Certainly, Your Honor. I want to be able to address both points, Dr. Slowick and the treating physician discussion, which I haven't been able to address yet. Regarding Dr. Slowick, Your Honor is exactly correct in what you said, that Dr. Slowick's opinion could be read to support the appellant's position and could be read to support the ALJ's. Under substantial evidence review, that means that this court has to affirm the commissioner's decision. It's not enough that it could be read to support the claimant's position. If two rational inferences are both supported, this court has explained over and over, for example, in Shillow, Brault, McIntyre, if both rational inferences are supported, the court has to affirm the commissioner's inference. But not if there's so many errors in what the ALJ is relying on. Even with respect to Dr. Slowick, in the discussion of why that was something the ALJ relied on, the ALJ talked about mild to moderate impairment related to concentration, and it wasn't mild to moderate. It was moderate. I don't know where the mild to moderate came from. In the paragraph before, it's clear that it's moderate. So there's all these inaccuracies that I'm not sure we should have too much comfort that the ALJ was understanding all the evidence in the record. Your Honor, the ALJ recited Dr. Slowick's exam findings and her opinion accurately. In the exam findings, she observed mild to moderate difficulties in the tasks that she was performing, and the ALJ accurately noted that she opined that the difficulties in this one area, sustaining a routine and regulating emotions, was moderate to markedly impaired. The ALJ included significant limitations in all of those areas. Let's talk about the social worker. Don't you think it's important? Your Honor, do you want me to address the treating physician role question? Because I haven't been able to do that, and I only have three minutes left. I apologize. Go ahead. Regarding the ALJ's failure to cite the May 2017 opinion, you're absolutely correct. There's no citation to it. We've conceded that in the brief. That error is harmless under Zabala for two reasons. One, that opinion was not inconsistent with the RFC. In May 2017, Dr. Merhoff said that the claimant's abilities in understanding and memory, sustaining concentration and persistence, social interaction, and adaptation were limited. The ALJ found that Ms. Hamilton was limited in all of those areas. So it's not even clear that that opinion was inconsistent with the RFC. Moreover, it's not inconsistent with the other evidence that the ALJ did address, which was the opinions that are not medical opinions. They're statements on an issue reserved to the commissioner, that Ms. Hamilton was not able to work or was clearly disabled. The ALJ gave those little weight for several reasons. The ALJ acknowledged that Dr. Merhoff was a treating source and discussed his treatment and discussed his treatment notes. As this Court found in Shillow and in Meyer, which are both cited in our brief, a discussion of the treatment notes and acknowledgement that this is a treating source is a recognition of that factor under Burgess. Second, the ALJ recognized that Dr. Merhoff was a treating psychiatrist, fully recognizing that that was his specialty. He was a psychiatrist. That's what he was treating her for. You mentioned the long length of the treatment relationship, which, again, the ALJ discussed the treatment notes throughout. I do want to point out that the only opinion that gave limitations, which was just that there were limitations, was from May 2017. Dr. Merhoff, at that point, had only been seeing Ms. Hamilton for about nine months, so the whole existence of the treatment relationship did not bear on that May 2017 opinion. Moreover, the ALJ then went on to explain that the opinion was inconsistent with the conservative nature of Ms. Hamilton's treatment, with the exam findings from Dr. Slowick, and with the other examination findings, which I referred to before. Inconsistency with the longitudinal record, as detailed throughout the record, is a good reason under Estrella-Shillow, which is cited in our brief. And this court, again, recently found in Shillow that even a failure, a procedural error, as we have conceded to explicitly go through one by one, each Burgess factor is harmless, and that that procedural error does not require remand if the ALJ does exactly the kind of thing that the ALJ did here in acknowledging the treatment notes, the treating relationship, the specialty, and the inconsistencies with the longitudinal record. All right. Chief Judge, with his permission, can you address the fact that great weight was given to the social worker without any acknowledgement that this is a non-acceptable medical source? Shouldn't we be concerned that, you can correct me if I'm wrong, it seemed to be treated as equal in its weight to the other medical sources, so there's no acknowledgement that this is a non-acceptable medical source. The social worker only last saw Ms. Hamilton in December of 2016, so didn't see her at all in 2017, and there were no treatment records at all. So the combination of those things, shouldn't that concern us, that great weight was given to the social worker in that circumstance? No, Your Honor, for several reasons. One, the ALJ acknowledged that this was a social worker. She didn't purport to claim that this was a doctor. It didn't acknowledge the law. It didn't acknowledge the law that a social worker is not an acceptable medical source under the regulations. Well, the ALJ was still required to discuss and weigh that opinion. If she had not done so, it would have been a reversible error. I understand that, but wouldn't you think it would be helpful to note that it's not on the same level as the medical sources? Helpful, absolutely necessary, no. And reversible error, no. The ALJ also, the fact that Ms. Kiley did not treat the claimant during the relevant period alone is not a reason to remand, as this court explained in Monette, which is cited in our brief. I know, but the ALJ didn't explain, even though she didn't treat her during the relevant period, this is why I'm giving great weight to it. She did. She explained that it was consistent. What did she say, even though the social worker did not treat during the relevant period? She doesn't say even though, but she explains that she gave great weight because it was Notice that. We don't, but that doesn't require remand. Okay, thank you. Thank you. I'm going to ask that you refer. Just briefly, we're not asking the court to re-weigh the evidence. We're simply asking that the ALJ be required to properly weigh the evidence, and we submit that the improper weight over and over again here, the mistakes that were made, not just one of them, but the mistakes compound on top of one another, and as a result, if the judge had adequately weighed the evidence with respect to Dr. Mayerhoff, Dr. Slowick, the social worker, Dr. Harding, I don't think it can be said that she could simply arrive at the same RFC as a matter of law, and therefore we would request remand. Thank you. We take the matter under advisement. Thank you both.